## IN THE UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **NITALIA PENA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO. _____** |
| | ) | |
| **ALABAMA DEPARTMENT OF** | ) | **JURY TRIAL DEMANDED** |
| **PUBLIC HEALTH, and** | ) | |
| **SCOTT HARRIS, in his** | ) | |
| **in his official capacity,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |

## COMPLAINT

COMES NOW the Plaintiff, Nitalia Pena, by and through the undersigned counsel of record, K. David Sawyer, of McPhillips Shinbaum, L.L.P., and hereby asserts her Complaint against the named Defendants Alabama Department of Public Health and Scott Harris, in his official capacity, as set forth herein.

## I.    JURISDICTION & VENUE

1.    Plaintiff Nitalia Pena files her Complaint, institutes these proceedings, and invokes the jurisdiction of this Court under and by virtue of 28 U.S.C. §§ 1331 and 1334 (a)(4), as an action arising under the Rehabilitation Act, 29 U.S.C. § 701 et seq. (hereinafter referred to as the "Rehabilitation Act"; the Americans with

Disabilities Act Amendments Act of 2008, 42 U.S.C. §§ 12101 et seq., (hereinafter referred to as the "ADAAA"); and the Family and Medical Leave Act, 29 U.S.C. § 2615 et seq. (hereinafter referred to as the "FMLA"), to obtain compensatory and punitive damages; prospective, injunctive and other equitable relief, reasonable attorneys' fees and costs, and other damages suffered by the Plaintiff, due to each of the named Defendant's unlawful, wrongful and/or willful acts taken against the Plaintiff.

2.     The Plaintiff has exhausted any and all necessary administrative remedies, timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission (hereinafter referred to as the "EEOC"), and received a Determination and Notice of Rights mailed by the EEOC to Ms. Pena on or about January 15, 2025. (Attached as Exhibit 1).

3.     Venue is proper in the Northern Division of the Middle District of Alabama, since the majority of the alleged wrongful actions of Defendants occurred in Montgomery County, Alabama.

## II.    PARTIES

4.     The named Plaintiff, Nitalia Pena (hereinafter "Plaintiff" or "Ms. Pena") is a black, Hispanic female, is of sound mind and body, a citizen of the United States and a resident of Montgomery County, Alabama.    Plaintiff is over the age of nineteen years.

5.     The Defendant, Alabama Department of Public Health (hereinafter "Defendant ADPH" or "ADPH"), is a department of the State of Alabama, and currently receives, and in the past has received, federal financial funding, and a majority of the alleged wrongful acts of ADPH are in violation of the ADAAA, the Rehabilitation Act, and the FMLA, referenced below. At all times relevant to this Complaint, Plaintiff was employed by the ADPH in its Montgomery County Office.

6.     The Defendant, Scott Harris, M.D., M.P.H. (hereinafter "Defendant Harris"), at all times relevant, was an officer or Director of the ADPH. Defendant Harris is named in his official capacity and in violation of the ADAAA. The Plaintiff seeks from this Defendant, in his official capacity, such equitable, prospective and injunctive relief as allowed by law, including, but not limited to, her return to work with ADPH.

## III.     STATEMENT OF FACTS

7.     Ms. Nitalia Pena is a graduate of Auburn University Montgomery, with a B.S. degree in Physical Science (physics/chemistry) and was first employed by the Alabama Department of Public Health ("ADPH") in November 2010 as a Radiation Physicist.

8.     Ms. Pena suffers from a qualified disability under the ADAAA and the Rehabilitation Act, and has been treated for seizures, anxiety and depression,

including immunodeficiency, Posterior Tibial Tendon Dysfunction, psychosis and ADHD.

9.      In 2019, Ms. Pena began suffering from health-related issues due to her qualified disabilities and ADPH removed Ms. Pena from any travel related to her work.

10.     Also, in 2019, Plaintiff began to exhibit symptoms consistent with Post Traumatic Stress Disorder (PTSD) which Ms. Pena brought to the attention of her physician and employer.

11.     Thereafter, and during the Covid-19 pandemic period, ADPH assigned Ms. Pena to work both at her desk, and remotely.

12.     Throughout this period, Ms. Pena communicated that her health concerns were affecting her work performance and made numerous requests for reasonable accommodations, both verbally and in writing, to her supervisors. This specifically included many emails and letters sent to her supervisors.

13.     Despite being well aware of Ms. Pena's disability and requested accommodations, not a single person at ADPH ever met with Ms. Pena to discuss her accommodation requests, and no one at ADPH ever began or conducted any interactive process with Ms. Pena to address her accommodation requests.

14.    In October 2021, Ms. Pena suffered a seizure while in her office and hit her head on her desk.  At that time, John (Nick) Swindall instructed Ms. Pena to go home.

15.    Shortly thereafter, Ms. Pena applied for FMLA with ADPH for leave due to her serious illness, and to seek proper medical care and determine the cause of her active seizures.

16.    On or about December 7, 2021, Ms. Pena informed John (Nick) Swindall, Danita Rose, Brent Hatcher and David Tuberville at ADPH of her intent to return from leave at ADPH with a detailed explanation of her neurological disability, including her inability to drive as required by law and as instructed by her treating physician.  However, ADPH did not respond to Ms. Pena, nor did ADPH allow Ms. Pena to return to work.

17.    In addition, Ms. Pena submitted multiple accommodation requests to ADPH and to her supervisors seeking reasonable accommodations.  Ms. Pena submitted her repeated accommodation requests to John (Nick) Swindall, Danita Rose, Brent Hatcher and David Tuberville.

18.    Ms. Pena's accommodation requests included supporting medical documentation.  Ms. Pena further authorized ADPH and the Alabama Department of Rehabilitation Services to speak directly to her physicians.

19.     Ms. Pena also requested to meet with someone at ADPH to discuss her accommodation requests and requested intermittent leave as listed by her doctor.

20.     However, not a single person at ADPH agreed to meet with Ms. Pena, and no one from ADPH ever contacted her physicians concerning Ms. Pena's disability and reasonable accommodations requests.

21.     After submitting her accommodation requests, including information from her physicians, no person at ADPH ever contacted Ms. Pena acknowledging her information as an accommodation request, and no person at ADPH scheduled any meeting to address Ms. Pena's accommodation requests.

22.     Still, Ms. Pena more than adequately described to ADPH and her supervisors her disability, her doctor's diagnosis, and how the symptoms of her disability could be reasonably accommodated, including her inability to drive.

23.     Again, at no time after receiving information from Ms. Pena and her doctors did anyone at ADPH contact Ms. Pena to discuss or clarify what she and her doctors requested as appropriate reasonable accommodations.

24.     At no time after receiving this information from Ms. Pena and her doctors did anyone at ADPH ask Ms. Pena any questions concerning the nature of her disability or functional limitations in order to identify or address any effective and reasonable accommodations.

25.    In addition, at no time did anyone at ADPH ask Plaintiff or any health care or rehabilitation professional for additional documentation or other information in efforts to address Plaintiff's disability and her reasonable accommodation requests.

26.    In other words, no one at ADPH ever participated in any interactive process with Ms. Pena to discuss her accommodation requests or to provide any alternative suggestions for providing Ms. Pena with reasonable accommodations.

24.    ADPH simply ignored Ms. Pena's accommodation requests and deliberately refused Ms. Pena the opportunity to return to work.

25.    ADPH further refused to acknowledge or permit Ms. Pena to properly apply for and receive any and all FMLA benefits to which she was entitled due to her serious illness, including intermittent leave or extended leave.

26.    Ms. Pena also notified ADPH that it was not following the law or its own policy concerning the ADAAA, the Rehabilitation Act, and the FMLA, and that ADPH was discriminating or retaliating against her for requesting FMLA leave and for requesting reasonable accommodations as a qualified individual with disabilities.

27.    Ms. Pena also filed a claim of disability discrimination with HR Donita Rose at ADPH through the Alabama State Employee's Association ("ASEA").  At that time, ADPH informed the ASEA that Ms. Pena could only return to work without limitation or accommodation, or otherwise she would be terminated from

her employment.  Alternatively, ADPH also informed ASEA that Ms. Pena could seek "disability retirement."

28.     Ms. Pena further informed ADPH that although she had been instructed by her doctors not to drive a vehicle for six months, she had secured transportation with other individuals, and that even a co-worker had volunteered to provide Ms. Pena with transportation.

29.     Nonetheless, on January 24, 2022, Defendant Scott Harris mailed a letter to Ms. Pena's mother's address (different from all other letters addressed by ADHP to Ms. Pena) advising Ms. Pena that "it had been recommended to me by your supervisors that you be dismissed from employment with the Alabama Department of Public Health."  This letter further scheduled a "pre-termination conference" on January 28, 2022.

30.     Ms. Pena did not receive this letter and only learned of this "pre-termination conference" by a telephone call from Ms. Danita Rose on January 27, 2022.  Nonetheless, Ms. Pena attended this conference the following day.

31.     Several days later, on February 1, 2022, ADPH Director John Swindall emailed Ms. Pena a copy of a letter from Defendant Scott Harris (again mailed to Ms. Pena's mother's address), advising Ms. Pena she had been terminated from her employment with ADPH.

32.     On that same day, Ms. Pena requested a hearing with the Personnel Board for the State of Alabama.

33.     On or about May 11, 2022, Ms. Pena also timely filed with the EEOC a Charge of Discrimination alleging both discrimination and retaliation due to her disability and requests for reasonable accommodations.

34.     On January 18, 2023, the Personnel Board for the State of Alabama upheld ADPH's decision to terminate Ms. Pena.

35.     Two years later, on January 15, 2025, the EEOC finally issued a Determination and Notice of Rights to Ms. Pena, including a notice of her Right to Sue.  Ms. Pena received this Determination and Notice on January 17, 2025. (Exhibit 1).

36.     ADPH brazenly, falsely, willfully, and without evidence, decided to terminate Ms. Pena's employment with ADPH.

37.     As a direct and proximate result of the Defendants' unlawful actions, Ms. Pena has suffered significant compensatory damages, including but not limited to lost income and benefits, mental anguish and emotional distress.  In addition, ADHP placed Ms. Pena on the State's "No-Hire" list, resulting in additional damages, including the inability to seek employment with the State of Alabama.

## IV.   <u>CLAIMS</u>

### COUNT ONE
### DISABILITY DISCRIMINATION AND INTERFERENCE
### IN VIOLATION OF THE REHABILITATION ACT, 29 U.S.C. § 701, et seq.

38.     Ms. Pena suffers from a qualified disability under the ADAAA and the Rehabilitation Act, and has been treated for seizures, anxiety and depression, including immunodeficiency, Posterior Tibial Tendon Dysfunction, psychosis and ADHD.

39.     In 2019, Ms. Pena began suffering from health-related issues due to her qualified disabilities and ADPH removed Ms. Pena from any travel related to her work.

40.     Also, in 2019, Plaintiff began to exhibit symptoms consistent with Post Traumatic Stress Disorder (PTSD) which Ms. Pena brought to the attention of her physician and employer.

41.     Thereafter, and during the Covid-19 pandemic period, ADPH assigned Ms. Pena to work both at her desk, and remotely.

42.     Throughout this period, Ms. Pena communicated that her health concerns were affecting her work performance and made numerous requests for reasonable accommodations, both verbally and in writing, to her supervisors. This specifically included many emails and letters sent to her supervisors.

43.     Despite being well aware of Ms. Pena's disability and requested accommodations, not a single person at ADPH ever met with Ms. Pena to discuss her accommodation requests, and no one at ADPH ever began or conducted any interactive process with Ms. Pena to address her accommodation requests.

44.     In October 2021, Ms. Pena suffered a seizure while in her office and hit her head on her desk.  At that time, John (Nick) Swindall instructed Ms. Pena to go home.

45.     Shortly thereafter, Ms. Pena applied for FMLA with ADPH for leave due to her serious illness, and to seek proper medical care and determine the cause of her active seizures.

46.     On or about December 7, 2021, Ms. Pena informed John (Nick) Swindall, Danita Rose, Brent Hatcher and David Tuberville at ADPH of her intent to return from leave at ADPH with a detailed explanation of her neurological disability, including her inability to drive as required by law and as instructed by her treating physician.  However, ADPH did not respond to Ms. Pena, nor did ADPH allow Ms. Pena to return to work.

47.     In addition, Ms. Pena submitted multiple accommodation requests to ADPH and to her supervisors seeking reasonable accommodations.  Ms. Pena submitted her repeated accommodation requests to John (Nick) Swindall, Danita Rose, Brent Hatcher and David Tuberville.

48.    Ms. Pena's accommodation requests included supporting medical documentation.  Ms. Pena further authorized ADPH and the Alabama Department of Rehabilitation Services to speak directly to her physicians.

49.    Ms. Pena also requested to meet with someone at ADPH to discuss her accommodation requests and requested intermittent leave as listed by her doctor.

50.    However, not a single person at ADPH agreed to meet with Ms. Pena, and no one from ADPH ever contacted her physicians concerning Ms. Pena's disability and reasonable accommodations requests.

51.    After submitting her accommodation requests, including information from her physicians, no person at ADPH ever contacted Ms. Pena acknowledging her information as an accommodation request, and no person at ADPH scheduled any meeting to address Ms. Pena's accommodation requests.

52.    Still, Ms. Pena more than adequately described to ADPH and her supervisors her disability, her doctor's diagnosis, and how the symptoms of her disability could be reasonably accommodated, including her inability to drive.

53.    Again, at no time after receiving information from Ms. Pena and her doctors did anyone at ADPH contact Ms. Pena to discuss or clarify what she and her doctors requested as appropriate reasonable accommodations.

54.    At no time after receiving this information from Ms. Pena and her doctors did anyone at ADPH ask Ms. Pena any questions concerning the nature of

her disability or functional limitations in order to identify or address any effective and reasonable accommodations.

55.    In addition, at no time did anyone at ADPH ask Plaintiff or any health care or rehabilitation professional for additional documentation or other information in efforts to address Plaintiff's disability and her reasonable accommodation requests.

56.    In other words, no one at ADPH ever participated in any interactive process with Ms. Pena to discuss her accommodation requests or to provide any alternative suggestions for providing Ms. Pena with reasonable accommodations.

57.    ADPH simply ignored Ms. Pena's accommodation requests and deliberately refused Ms. Pena the opportunity to return to work.

58.    ADPH further refused to acknowledge or permit Ms. Pena to properly apply for and receive any and all FMLA benefits to which she was entitled due to her serious illness, including intermittent leave or extended leave.

59.    Ms. Pena also notified ADPH that it was not following the law or its own policy concerning the ADAAA, the Rehabilitation Act, and the FMLA, and that ADPH was discriminating or retaliating against her for requesting FMLA leave and for requesting reasonable accommodations as a qualified individual with disabilities.

60.    Ms. Pena also filed a claim of disability discrimination with HR Donita Rose at ADPH through the Alabama State Employee's Association ("ASEA").  At

that time, ADPH informed the ASEA that Ms. Pena could only return to work without limitation or accommodation, or otherwise she would be terminated from her employment.  Alternatively, ADPH also informed ASEA that Ms. Pena could seek "disability retirement."

61.    Ms. Pena further informed ADPH that although she had been instructed by her doctors not to drive a vehicle for six months, she had secured transportation with other individuals, and that even a co-worker had volunteered to provide Ms. Pena with transportation.

62.    Nonetheless, on January 24, 2022, Defendant Scott Harris mailed a letter to Ms. Pena's mother's address (different from all other letters addressed by ADHP to Ms. Pena) advising Ms. Pena that "it had been recommended to me by your supervisors that you be dismissed from employment with the Alabama Department of Public Health."  This letter further scheduled a "pre-termination conference" on January 28, 2022.

63.    Ms. Pena did not receive this letter and only learned of this "pre-termination conference" by a telephone call from Ms. Danita Rose on January 27, 2022.  Nonetheless, Ms. Pena attended this conference the following day.

64.    Several days later, on February 1, 2022, ADPH Director John Swindall emailed Ms. Pena a copy of a letter from Defendant Scott Harris (again mailed to

Ms. Pena's mother's address), advising Ms. Pena she had been terminated from her employment with ADPH.

65.     On that same day, Ms. Pena requested a hearing with the Personnel Board for the State of Alabama.

66.     On or about May 11, 2022, Ms. Pena also timely filed with the EEOC a Charge of Discrimination alleging both discrimination and retaliation due to her disability and requests for reasonable accommodations.

67.     On January 18, 2023, the Personnel Board for the State of Alabama upheld ADPH's decision to terminate Ms. Pena.

68.     Two years later, on January 15, 2025, the EEOC finally issued a Determination and Notice of Rights to Ms. Pena, including a notice of her Right to Sue.  Ms. Pena received this Determination and Notice on January 17, 2025. (Exhibit 1).

69.     ADPH brazenly, falsely, willfully, and without evidence, decided to terminate Ms. Pena's employment with ADPH.

70.     As a direct and proximate result of the Defendants' unlawful actions, Ms. Pena has suffered significant compensatory damages, including but not limited to lost income and benefits, mental anguish and emotional distress.  In addition, ADHP placed Ms. Pena on the State's "No-Hire" list, resulting in additional damages, including the inability to seek employment with the State of Alabama.

71.    Plaintiff avers that the Defendant ADPH has received, and currently receives, federal funding as identified by the Rehabilitation Act, 29 U.S.C. § 701 et seq.

72.    Plaintiff avers that she is an individual with long-term qualifying disabilities.  These disabilities qualify for consideration and protection under the Rehabilitation Act, 29 U.S.C. § 701 et seq.

73.    Section 504 of the Rehabilitation Act prohibits discrimination on the basis of disability by any entity, and in any program and/or activity, receiving federal financial assistance.

74.    Section 504 of the Rehabilitation Act imposes an affirmative obligation on ADPH to ensure that all programs and services are accessible to people with disabilities, including the providing of reasonable modifications.

75.    The Defendant ADPH intentionally, deliberately, and willfully discriminated against Ms. Pena due to her disabilities and/or perceived disabilities, in callous disregard of Ms. Pena's rights under the Rehabilitation Act, and in violation of its affirmative duties under the Rehabilitation Act.

76.    The Defendant ADPH also regarded Ms. Pena as having a disability due to her depression, or other psychiatric issues, and refused to provide Ms. Pena with reasonable accommodations because of her disability and/or perceived disability.

77.    The Defendant ADPH also regarded Ms. Pena as having a disability due to her depression, or other psychiatric issues, and placed Ms. Pena on leave without pay because of her disability and/or perceived disability.

78.    The Defendant ADPH also regarded Ms. Pena as having a disability due to her depression, or other psychiatric issues, and terminated Ms. Pena because of her disability and/or perceived disability.  In addition, ADHP placed Ms. Pena on the State's "No-Hire" list, resulting in additional damages, including the inability to seek employment with the State of Alabama.

79.    By reason of the Defendant's discrimination, Plaintiff is entitled to all legal and equitable remedies available under the Rehabilitation Act, including money damages and injunctive relief.

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that the Court grant her the following relief:

a)    Judgment declaring that the Defendant has discriminated against her and interfered with her rights because of her disability and/or perceived disability, in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq.;

b)    Equitable and injunctive relief to which Plaintiff may be entitled;

c)    An award of compensatory damages, including back pay, interest, mental anguish and emotional distress, and other damages to which Plaintiff may be entitled;

d)      An award of all court costs and reasonable attorneys' fees pursuant to 29 U.S.C. § 794(a)(1); and

e)      Such further, other and different relief as the Court may deem appropriate and necessary.

## COUNT TWO

## DISABILITY RETALIATION IN VIOLATION OF
## THE REHABILITATION ACT, 29 U.S.C. § 701, et seq.

80.     Ms. Pena suffers from a qualified disability under the ADAAA and the Rehabilitation Act, and has been treated for seizures, anxiety and depression, including immunodeficiency, Posterior Tibial Tendon Dysfunction, psychosis and ADHD.

81.     In 2019, Ms. Pena began suffering from health-related issues due to her qualified disabilities and ADPH removed Ms. Pena from any travel related to her work.

82.     Also, in 2019, Plaintiff began to exhibit symptoms consistent with Post Traumatic Stress Disorder (PTSD) which Ms. Pena brought to the attention of her physician and employer.

83.     Thereafter, and during the Covid-19 pandemic period, ADPH assigned Ms. Pena to work both at her desk, and remotely.

84.     Throughout this period, Ms. Pena communicated that her health concerns were affecting her work performance and made numerous requests for

reasonable accommodations, both verbally and in writing, to her supervisors. This specifically included many emails and letters sent to her supervisors.

85.    Despite being well aware of Ms. Pena's disability and requested accommodations, not a single person at ADPH ever met with Ms. Pena to discuss her accommodation requests, and no one at ADPH ever began or conducted any interactive process with Ms. Pena to address her accommodation requests.

86.    In October 2021, Ms. Pena suffered a seizure while in her office and hit her head on her desk.  At that time, John (Nick) Swindall instructed Ms. Pena to go home.

87.    Shortly thereafter, Ms. Pena applied for FMLA with ADPH for leave due to her serious illness, and to seek proper medical care and determine the cause of her active seizures.

88.    On or about December 7, 2021, Ms. Pena informed John (Nick) Swindall, Danita Rose, Brent Hatcher and David Tuberville at ADPH of her intent to return from leave at ADPH with a detailed explanation of her neurological disability, including her inability to drive as required by law and as instructed by her treating physician.  However, ADPH did not respond to Ms. Pena, nor did ADPH allow Ms. Pena to return to work.

89.    In addition, Ms. Pena submitted multiple accommodation requests to ADPH and to her supervisors seeking reasonable accommodations.  Ms. Pena

submitted her repeated accommodation requests to John (Nick) Swindall, Danita Rose, Brent Hatcher and David Tuberville.

90.    Ms. Pena's accommodation requests included supporting medical documentation.  Ms. Pena further authorized ADPH and the Alabama Department of Rehabilitation Services to speak directly to her physicians.

91.    Ms. Pena also requested to meet with someone at ADPH to discuss her accommodation requests and requested intermittent leave as listed by her doctor.

92.    However, not a single person at ADPH agreed to meet with Ms. Pena, and no one from ADPH ever contacted her physicians concerning Ms. Pena's disability and reasonable accommodations requests.

93.    After submitting her accommodation requests, including information from her physicians, no person at ADPH ever contacted Ms. Pena acknowledging her information as an accommodation request, and no person at ADPH scheduled any meeting to address Ms. Pena's accommodation requests.

94.    Still, Ms. Pena more than adequately described to ADPH and her supervisors her disability, her doctor's diagnosis, and how the symptoms of her disability could be reasonably accommodated, including her inability to drive.

95.    Again, at no time after receiving information from Ms. Pena and her doctors did anyone at ADPH contact Ms. Pena to discuss or clarify what she and her doctors requested as appropriate reasonable accommodations.

96.    At no time after receiving this information from Ms. Pena and her doctors did anyone at ADPH ask Ms. Pena any questions concerning the nature of her disability or functional limitations in order to identify or address any effective and reasonable accommodations.

97.    In addition, at no time did anyone at ADPH ask Plaintiff or any health care or rehabilitation professional for additional documentation or other information in efforts to address Plaintiff's disability and her reasonable accommodation requests.

98.    In other words, no one at ADPH ever participated in any interactive process with Ms. Pena to discuss her accommodation requests or to provide any alternative suggestions for providing Ms. Pena with reasonable accommodations.

99.    ADPH simply ignored Ms. Pena's accommodation requests and deliberately refused Ms. Pena the opportunity to return to work.

100.    ADPH further refused to acknowledge or permit Ms. Pena to properly apply for and receive any and all FMLA benefits to which she was entitled due to her serious illness, including intermittent leave or extended leave.

101.    Ms. Pena also notified ADPH that it was not following the law or its own policy concerning the ADAAA, the Rehabilitation Act, and the FMLA, and that ADPH was discriminating or retaliating against her for requesting FMLA leave and for requesting reasonable accommodations as a qualified individual with disabilities.

102.   Ms. Pena also filed a claim of disability discrimination with HR Donita Rose at ADPH through the Alabama State Employee's Association ("ASEA").  At that time, ADPH informed the ASEA that Ms. Pena could only return to work without limitation or accommodation, or otherwise she would be terminated from her employment.  Alternatively, ADPH also informed ASEA that Ms. Pena could seek "disability retirement."

103.   Ms. Pena further informed ADPH that although she had been instructed by her doctors not to drive a vehicle for six months, she had secured transportation with other individuals, and that even a co-worker had volunteered to provide Ms. Pena with transportation.

104.   Nonetheless, on January 24, 2022, Defendant Scott Harris mailed a letter to Ms. Pena's mother's address (different from all other letters addressed by ADHP to Ms. Pena) advising Ms. Pena that "it had been recommended to me by your supervisors that you be dismissed from employment with the Alabama Department of Public Health."  This letter further scheduled a "pre-termination conference" on January 28, 2022.

105.   Ms. Pena did not receive this letter and only learned of this "pre-termination conference" by a telephone call from Ms. Danita Rose on January 27, 2022.  Nonetheless, Ms. Pena attended this conference the following day.

106.    Several days later, on February 1, 2022, ADPH Director John Swindall emailed Ms. Pena a copy of a letter from Defendant Scott Harris (again mailed to Ms. Pena's mother's address), advising Ms. Pena she had been terminated from her employment with ADPH.

107.    On that same day, Ms. Pena requested a hearing with the Personnel Board for the State of Alabama.

108.    On or about May 11, 2022, Ms. Pena also timely filed with the EEOC a Charge of Discrimination alleging both discrimination and retaliation due to her disability and requests for reasonable accommodations.

109.    On January 18, 2023, the Personnel Board for the State of Alabama upheld ADPH's decision to terminate Ms. Pena.

110.    Two years later, on January 15, 2025, the EEOC finally issued a Determination and Notice of Rights to Ms. Pena, including a notice of her Right to Sue.  Ms. Pena received this Determination and Notice on January 17, 2025. (Exhibit 1).

111.    ADPH brazenly, falsely, willfully, and without evidence, decided to terminate Ms. Pena's employment with ADPH.

112.    As a direct and proximate result of the Defendants' unlawful actions, Ms. Pena has suffered significant compensatory damages, including but not limited to lost income and benefits, mental anguish and emotional distress.  In addition,

ADHP placed Ms. Pena on the State's "No-Hire" list, resulting in additional damages, including the inability to seek employment with the State of Alabama.

113.   Plaintiff avers that the Defendant ADPH has received, and currently receives, federal funding as identified by the Rehabilitation Act, 9 U.S.C. § 701 et seq.

114.   Plaintiff avers that she is an individual with long-term qualifying disabilities.  These disabilities qualify for consideration and protection under the Rehabilitation Act, 29 U.S.C. § 701 et seq.

115.   Section 504 of the Rehabilitation Act prohibits retaliation on the basis of disability by any entity, and in any program and/or activity, receiving federal financial assistance.

116.   Section 504 of the Rehabilitation Act imposes an affirmative obligation on ADPH to ensure that all programs and services are accessible to people with disabilities, including the providing of reasonable modifications.

117.   Plaintiff participated in a protected activity when she was employed by the Defendant ADPH, and ADPH retaliated against her by refusing to provide Ms. Pena with reasonable accommodations because of her disability and/or perceived disability; placing Ms. Pena on leave without pay because of her disability and/or perceived disability; and by terminating Ms. Pena because of her disability and/or perceived disability.

118. The Defendant ADPH intentionally, deliberately, and willfully retaliated against Ms. Pena due to her disability and/or perceived disability, in callous disregard of Ms. Pena's rights under the Rehabilitation Act, and in violation of its affirmative duties under the Rehabilitation Act.

119. The Defendant ADPH regarded Ms. Pena as having a disability due to her depression, or other psychiatric issues, and retaliated against Ms. Pena for seeking accommodations and relief afforded by the Rehabilitation Act. In addition, ADHP placed Ms. Pena on the State's "No-Hire" list, resulting in additional damages, including the inability to seek employment with the State of Alabama.

120. By reason of the Defendant's retaliation, Plaintiff is entitled to all legal and equitable remedies available under the Rehabilitation Act, including money damages and injunctive relief.

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that the Court grant her the following relief:

a)    Judgment declaring that the Defendant has retaliated against her because of her disability and/or perceived disability, in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq.;

b)    Equitable and injunctive relief to which Plaintiff may be entitled;

c)    An award of compensatory damages, including back pay, interest, mental anguish and emotional distress, and other damages to which Plaintiff may be entitled;

d)    An award of punitive damages to which Plaintiff may be entitled;

e)    An award of all court costs and reasonable attorneys' fees pursuant to 29 U.S.C. § 794(a)(1); and

f)    Such further, other and different relief as the Court may deem appropriate and necessary.

## COUNT THREE

### DISABILITY DICRIMINATION AND RETALIATION IN VIOLATION OF THE REHABILITATION ACT, 29 U.S.C. § 701, et seq. DEMAND FOR PROSPECTIVE AND INJUNCTIVE RELEIF

121.   Plaintiff adopts and incorporates herein, as if fully stated herein, paragraphs 1 through 120 stated above.

122.   Plaintiff avers that she is an individual with long-term qualifying disabilities.  These disabilities qualify for consideration and protection under the ADA Amendments Act of 2008, 42 U.S.C. §§ 12101 et seq. ("the ADAAA").

123.   The ADAAA prohibits discrimination on the basis of disability by any entity, and in any program and/or activity, receiving federal financial assistance.

124.   The ADAAA imposes an affirmative obligation on ADPH to ensure that all programs and services are accessible to people with disabilities, including the providing of reasonable modifications.

125.   The Defendant Scott Harris, in his official capacity, intentionally, deliberately, and willfully discriminated against Ms. Pena due to her disabilities and/or perceived disabilities, in callous disregard of Ms. Pena's rights under the ADAAA, and in violation of its affirmative duties under the ADAAA.

126.   The Defendant Scott Harris, in his official capacity, also regarded Ms. Pena as having a disability due to her depression, or other psychiatric issues, and refused to provide Ms. Pena with reasonable accommodations because of her disability and/or perceived disability.

127.   The Defendant Scott Harris, in his official capacity, also regarded Ms. Pena as having a disability due to her depression, or other psychiatric issues, and placed Ms. Pena on leave without pay because of her disability and/or perceived disability.

128.   The Defendant Scott Harris, in his official capacity, also regarded Ms. Pena as having a disability due to her depression, or other psychiatric issues, and terminated Ms. Pena because of her disability and/or perceived disability.   In addition, Scott Harris placed Ms. Pena on the State's "No-Hire" list, resulting in

additional damages, including the inability to seek employment with the State of Alabama.

129.   By reason of the Defendant's discrimination, Plaintiff is entitled to all legal and equitable, prospective and injunctive remedies available under the ADAAA.

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that the Court grant her the following relief:

a)     Judgment declaring that the Defendant Scott Harris, in his official capacity, discriminated or retaliated against Plaintiff because of her disability and/or perceived disability, in violation of the ADAAA;

b)     Judgment awarding Plaintiff all legal, equitable, prospective and injunctive remedies available under the ADAAA, including her return to employment with ADPH, with reasonable accommodations as defined and applied by the ADAAA;

c)     An award of all court costs and reasonable attorneys' fees pursuant to ADAAA; and

d)      Such further, other and different relief as the Court may deem appropriate and necessary.

## COUNT FOUR

## WILLFULL RETALIATION TAKEN AGAINST PLAINTIFF FOR EXCERCISING FMLA RIGHTS

130.   In 2019, Ms. Pena began suffering from serious health-related issues due to her qualified disabilities and ADPH removed Ms. Pena from any travel related to her work.

131.   Also, in 2019, Plaintiff began to exhibit symptoms consistent with Post Traumatic Stress Disorder (PTSD) which Ms. Pena brought to the attention of her physician and employer.

132.   Thereafter, and during the Covid-19 pandemic period, ADPH assigned Ms. Pena to work both at her desk, and remotely.

133.   Throughout this period, Ms. Pena communicated that her serious health concerns were affecting her work performance and made numerous requests for reasonable accommodations.

134.   In October 2021, Ms. Pena suffered a seizure while in her office and hit her head on her desk.  At that time, John (Nick) Swindall instructed Ms. Pena to go home.

135.   Shortly thereafter, Ms. Pena applied for FMLA with ADPH for leave due to her serious illness, and to seek proper medical care and determine the cause of her active seizures.

136. On or about December 7, 2021, Ms. Pena informed John (Nick) Swindall, Danita Rose, Brent Hatcher and David Tuberville at ADPH of her intent to return from leave at ADPH with a detailed explanation of her inability to drive as required by law and as instructed by her treating physician. However, ADPH did not respond to Ms. Pena, nor did ADPH allow Ms. Pena to return to work.

137. Ms. Pena also requested to meet with someone at ADPH to discuss her requested intermittent leave as listed by her doctor.

138. Still, Ms. Pena more than adequately described to ADPH and her supervisors her inability to drive after seeing her doctors.

139. ADPH willfully ignored Ms. Pena's request to return to work and deliberately refused Ms. Pena the opportunity to return to work.

140. ADPH further refused to acknowledge or permit Ms. Pena to properly apply for and receive any and all FMLA benefits to which she was entitled due to her serious illness, including FMLA leave, intermittent leave or extended leave.

141. Ms. Pena also notified ADPH that it was not following the law or its own policy concerning the FMLA, and that ADPH was discriminating or retaliating against her for requesting FMLA leave and the opportunity to return to work.

142. Ms. Pena further informed ADPH that although she had been instructed by her doctors not to drive a vehicle for six months, she had secured transportation

with other individuals, and that even a co-worker had volunteered to provide Ms. Pena with transportation.

143.    Nonetheless, on January 24, 2022, Defendant Scott Harris mailed a letter to Ms. Pena's mother's address (different from all other letters addressed by ADHP to Ms. Pena) advising Ms. Pena that "it had been recommended to me by your supervisors that you be dismissed from employment with the Alabama Department of Public Health."  This letter further scheduled a "pre-termination conference" on January 28, 2022.

144.    Ms. Pena did not receive this letter and only learned of this "pre-termination conference" by a telephone call from Ms. Danita Rose on January 27, 2022.  Nonetheless, Ms. Pena attended this conference the following day.

145.    Several days later, on February 1, 2022, ADPH Director John Swindall emailed Ms. Pena a copy of a letter from Defendant Scott Harris (again mailed to Ms. Pena's mother's address), advising Ms. Pena she had been terminated from her employment with ADPH.

146.    ADPH brazenly, falsely, willfully, and without evidence, decided to terminate Ms. Pena's employment with ADPH in willful retaliation for applying for and/or taking leave as allowed by FMLA.

147.   Plaintiff avers that Defendant qualifies as an "employer," as that term is defined in the FMLA, 29 U.S.C. Section 2611(4), and that Plaintiff is an "eligible employee," as that term is defined in the FMLA, 29 U.S.C. Section 2611(2).

148.   Plaintiff avers that there was an "entitlement to leave" as defined in the FMLA, 29 U.S.C. Section 2612(1), because of the seriousness of Plaintiff's health condition, which was well known by the Defendant, and that Plaintiff was willfully and wantonly denied her entitlement to leave, as prescribed in FMLA,

149.   In a willful and retaliatory act, Defendant terminated Plaintiff after Plaintiff requested and/or received FMLA leave.

150.   As a direct and proximate result of the Defendants' willful and unlawful retaliatory actions taken in violation of the FMLA, Ms. Pena has suffered significant compensatory damages, including but not limited to lost income and benefits, mental anguish and emotional distress.  In addition, ADHP placed Ms. Pena on the State's "No-Hire" list, resulting in additional damages, including the inability to seek employment with the State of Alabama.

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that this Court grant the following relief:

a)   Judgment declaring that Defendant willfully retaliated against Plaintiff for having exercised an FMLA right;

b)      An award of compensatory damages, including back pay, interest, mental anguish and emotional distress, and other damages to which Plaintiff may be entitled;

c)      Punitive damages as allowed by law;

d)      An award of all court costs and reasonable attorneys' fees; and

e)      Such further, other and different relief as the Court may deem appropriate and necessary.

## V.    JURY DEMAND

Plaintiff hereby requests trial by jury on all issues so triable.

Respectfully submitted the 11th day of April 2025.

> Nitalia Pena, Plaintiff
> By:
>
> /s/ K. David Sawyer
> K. David Sawyer (ASB-5793-R61K)
> McPhillips Shinbaum, LLP
> 432 E. Jefferson Street
> Montgomery, AL  36104
> Telephone: (334) 262-1911
> Facsimile: (334) 263-2321
> kdsawyer64@outlook.com
> Counsel for Plaintiff

**OF COUNSEL**

McPhillips Shinbaum, LLP
432 E. Jefferson Street
Montgomery, AL  36104
Telephone: (334) 262-1911
Facsimile: (334) 263-2321
Counsel for Plaintiff

**PLAINTIFF WILL SERVE EACH DEFENDANT BY PERSONAL PROCESS**

**SERVER AT:**

> **ALABAMA DEPARTMENT OF HUMAN SERVICES**
> **The RSA Tower**
> **201 Monroe Street**
> **Suite 1150**
> **Montgomery, AL 36104**
>
> **SCOTT HARRIS M.D., M.P.H.**
> **ALABAMA DEPARTMENT OF HUMAN SERVICES**
> **The RSA Tower**
> **201 Monroe Street**
> **Suite 1150**
> **Montgomery, AL 36104**